E-FILED
Friday, 16 February, 2018 11:03:21 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN A. TALIANI, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    v. | )   17-CV-1055 |
| | ) |
| WEXFORD HEALTH SOURCES, INC., DIANE POUK, JAMES CARUSO, RILIWAN OJELADE, SHAWNA JONESON, ANDREW TILDEN, JOHN DOE, | ) |
| | ) |
|    Defendants. | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

    Plaintiff, proceeding pro se from his incarceration in the Hill Correctional Center, pursues claims for deliberate indifference to his asthma during various times in 2015 and 2016 at the Pontiac Correctional Center.

    Both sides move for summary judgment. In considering these motions, the Court has viewed the evidence in the light most favorable to the nonmovant, resolving material factual disputes in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). That standard warrants denying both motions,

either because disputed issues of material fact exist or because the record is not developed enough to make the determination.

## Analysis

Plaintiff has had asthma since he was a child and so is familiar with the symptoms and warning signs when his asthma is not well controlled. Unlike some child asthmatics, Plaintiff never outgrew his asthma and, drawing inferences in Plaintiff's favor, Plaintiff still needs two kinds of inhalers to keep his asthma under control: a corticoid steroid inhaler taken every day and a "short-acting beta-2 agonist" used every 4-6 hours on an as needed basis for acute flare-ups. Plaintiff's asthma has been relatively well controlled on a corticoid steroid inhaler called Alvesco—two daily inhalations (160 mg)—and a short-acting inhaler, Xopenex, used on an as needed basis.

No one disputes that Plaintiff's asthma is a serious medical need. The question is whether any of Defendants were deliberately indifferent. Deliberate indifference is the conscious disregard of a substantial risk of serious harm. An inference of deliberate indifference can arise if medical professionals take actions (or inactions) which are "such a substantial departure from accepted

professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a [professional] judgment." Petties v. Carter, 836 F.3d 722, 729 (7th Cir. 2016) (*quoting* Cole v. Fromm, 94 F.3d 254, 261–62 (7th Cir. 1996)).

Plaintiff's claims center around delays in obtaining refills of his inhalers and the cessation of Plaintiff's corticoid steroid inhaler. Plaintiff also challenges Wexford's written policy regarding refills of short-acting beta-2 agonists and Wexford's alleged policy of permitting only one medical complaint per visit. The Court's analysis is organized by Defendant since the claims against each Defendant do not necessarily overlap.

**I. Defendant Pouk**

Plaintiff had trouble obtaining timely refills of his inhalers in June and July of 2015. In particular, the refill of Plaintiff's Alvesco inhaler was 12 days late in June 2015 and six days late in July 2015. Plaintiff's refill of Xopenex was eight days late in June 2015. According to Plaintiff, Plaintiff sent many requests to Defendant Pouk during this time period, with no response. (Medical Requests attached to Complaint, d/e 1-1, pp. 9-18.)(*e.g.,* "Out! Out! Out!

Please refill RX Alvesco 160 inhaler Rx Xopenex inhaler having shortness of breath and pain on left side of chest"). Defendant Pouk was the Director of Nursing at Pontiac Correctional Center at the time.

Defendant Pouk avers that she cannot recall receiving any of Plaintiff's requests for refills and that, in any event, sending the request to her would not have been the proper procedure. However, Defendant Pouk does not explain what the proper procedure was or where Plaintiff's requests, addressed directly to Defendant Pouk, would have been sent. Additionally, though Defendant Pouk did not have the authority to write prescriptions, she did have the authority to review the status of Plaintiff's prescription. (Pouk Aff. ¶ 10.) The medical records show that Plaintiff already had current orders for refills through August 2015. (6/22/15 Progress Note, d/e 50-6, p. 16; Medication Administration Records, d/e 50-7, p. 31, showing prescriptions for Alvesco and Xopenex through August 2015.) Defendant Caruso, a Physician Assistant, avers that he prescribed these inhalers on January 29, 2015, for seven months, which would have taken Plaintiff to near the end of August 2015. (Caruso Aff. ¶ 4.) Defendant Pouk, then, would not have had to

write any prescriptions for Plaintiff. Defendant Pouk does not address who is responsible for ensuring prescribed refills are filled timely or why Plaintiff's refills were late. In short, the record is not developed enough to rule out a reasonable inference that Defendant Pouk knew that Plaintiff needed refills to adequately control Plaintiff's asthma and that Defendant Pouk had the authority to make that happen. Whether Plaintiff suffered constitutionally-actionable harm from these temporary delays is questionable, but that question is not addressed by Defendants.

## II. Defendant Caruso

Defendant Caruso worked as a Physician Assistant at Pontiac Correctional Center from September 15, 2014, through January 5, 2016. Defendant Caruso saw Plaintiff on various dates for various ailments during this time period, including the assessment of Plaintiff's asthma at the asthma chronic clinic.

Defendant Caruso first saw Plaintiff on January 29, 2015 and continued Plaintiff's prescriptions for Alvesco and Xopenex for seven months. (Caruso Aff. ¶ 4.) Defendant Caruso realized on July 27, 2015, that Plaintiff had been receiving only 80 mg of Alvesco, even though Defendant Caruso had prescribed 160 mg. Defendant

Caruso then increased the dosage to 160 mg to correct the dosage. (Caruso Aff. ¶ 9.)

Plaintiff focuses on one visit with Defendant Caruso at the asthma clinic on July 21, 2015. Plaintiff contends that Defendant Caruso did not "provide an education plan," failed to conduct a meaningful physical exam, and failed to conduct a peak flow test. Plaintiff also contends that Plaintiff told Defendant Caruso that Plaintiff's inhalers were out and that Defendant Caruso allegedly refused to obtain inhalers from what Plaintiff believes the prison keeps as an emergency back-up stock.

Defendant Caruso avers that Plaintiff's asthma was stable on July 21, 2015 and Plaintiff did not require "any evaluation other than those normally completed during an asthma chronic clinic which would include patient discussion, renewal of medications, and an opportunity for Plaintiff to address any concerns he had with regard to his chronic condition." (Caruso Aff. ¶ 18.)

Defendant Caruso argues, and the Court agrees, that Plaintiff does not explain what harm Plaintiff suffered from not being provided an education plan, a physical exam, or a peak flow test at the asthma clinic July 21, 2015. Plaintiff did not need to be

educated about asthma, having lived with asthma since childhood. And, a less than thorough exam (accepting Plaintiff's version) does not by itself give rise to a constitutional violation.

However, Defendant Caruso does not address Plaintiff's allegation about needing inhaler refills. Plaintiff would not have been out of his Xopenex inhaler at the July 21 visit because that inhaler had just been refilled on June 18, 2015. However, Plaintiff's Alvesco inhaler lasted only 30 days as prescribed and would have run out on or around July 17, four days before Plaintiff saw Defendant Caruso and two days after Plaintiff started sending requests for a refill. Plaintiff also saw Defendant Caruso on June 20, 2015, (Caruso Aff. ¶ 7), which was shortly after Plaintiff had problems with his June refills. Defendant Caruso does not explain what control, if any, he had over seeing that the inhalers were timely refilled.

A reasonable inference arises that, like Defendant Pouk, Defendant Caruso knew that Plaintiff needed refills of his inhalers and had the authority to do something about it. Again, whether Plaintiff suffered harm from these temporary delays is

questionable, but Defendant Caruso does not address this issue. Summary judgment is denied for Defendant Caruso.

### III. Defendants Tilden, Ojelade, and Joneson

Defendant Dr. Tilden discontinued Plaintiff's Alvesco inhaler altogether on July 20, 2016. Dr. Tilden avers that he did this because of the possible negative effects of the long term use of steroids and the fact that Plaintiff's asthma had been stable for a long period of time. (Tilden Aff. ¶¶ 7-8.) Dr. Tilden avers that his plan was to monitor the situation to determine if Plaintiff still needed the steroid inhaler. (Tilden Aff. ¶9.) Plaintiff was still provided his short-acting inhaler.

Plaintiff maintains that Dr. Tilden never told Plaintiff about the discontinuation of Plaintiff's Alvesco inhaler, though that fact would have been obvious to Plaintiff when Plaintiff received no refill. Shortly after the discontinuation, Plaintiff began experiencing symptoms such as shortness of breath and tightness in his chest. On August 31, 2016, Plaintiff saw Defendant Ojelade, a Nurse Practitioner, who refused to restart Plaintiff's Alvesco. Plaintiff's understanding from this interaction was that Defendant Ojelade's refusal was not based on independent medical judgment

but instead on going along with Dr. Tilden's plan to "test" the asthmatics to try to save money.

A few days later, on September 2, 2016, Plaintiff saw Defendant Joneson, a sick call nurse, for the same asthma complaints, as well as complaints about Plaintiff's shoulder and a cold. Defendant Joneson told Plaintiff to pick one complaint to be addressed. Plaintiff chose his asthma, and Defendant Joneson referred Plaintiff to the next level of medical provider.

Seven days later, on September 9, 2016, Plaintiff saw Defendant Ojelade. Defendant Ojelade again did not restart Plaintiff's Alvesco. On September 29, 2016, Plaintiff summoned a Lieutenant Evans, seeking help for what Plaintiff describes as a cough and severe chest pains. According to Plaintiff, Lieutenant Evans tried to help by calling the medical unit, but nothing happened. Plaintiff then filed an emergency grievance and was seen by a Nurse Hansen on September 30, 2015. Plaintiff asserts that he was wheezing and had difficulty breathing. Nurse Hansen diagnosed an exacerbation of Plaintiff's asthma and restarted the Alvesco. Nurse Hansen also administered a nebulizer treatment and prescribed Claritin and Prednisone.

Dr. Tilden argues that his decision to discontinue Plaintiff's Alvesco was based on Dr. Tilden's professional judgment to minimize the possible negative effects of taking Alvesco unnecessarily. A rational juror could agree.

A rational juror could also disagree. Dr. Tilden does not address Plaintiff's contention that the Alvesco should have been tapered rather than abruptly stopped, and Dr. Tilden set up no follow-up appointments to see how Plaintiff was handling this significant change in Plaintiff's medications. Nor did Dr. Tilden note in the records that the discontinuation was a trial or that the Alvesco should be restarted if Plaintiff began to experience symptoms. Arguably, Defendant Ojelade chose not to exercise his independent professional judgment to override Dr. Tilden, the Medical Director.

Defendant Joneson, the nurse who saw Plaintiff during this time period, correctly points out that she referred Plaintiff to see the next level of medical professional and that she did not have prescription authority. However, if Plaintiff's condition was as described by Plaintiff, Defendant Joneson arguably should have recognized the need for immediate referral. Instead, Plaintiff did

not see Defendant Ojelade for seven days. Damages against Defendant Joneson may be difficult to prove since Defendant Ojelade did not restart the Alvesco, but the Court cannot rule out potential liability for Joneson on this record. Reasonable inferences arise in Defendants' favor, too, but that just demonstrates the existence of disputed material facts for trial.

### IV. Wexford Health Sources, Inc.

Wexford Health Sources, Inc. (Wexford), can be liable only if policies or practices attributable to Wexford caused the deliberate indifference to Plaintiff's asthma. <u>Teesdale v. City of Chicago</u>, 690 F.3d 829, 833-34 (7th Cir. 2012)(quoted cite omitted)(policy/practice must be "moving force" behind constitutional violation).

Plaintiff contends that Wexford has a written policy limiting refills on short-acting inhalers to every 180 days. (Wexford's 2011 Asthma Initiative, d/e 35-3, p. 18.) This is the same policy Plaintiff challenged unsuccessfully in his prior case, <u>Taliani v. Wexford Health Sources</u>, 13-cv-1471 (C.D. Ill.). The Court agrees with Defendants that Plaintiff's challenge to the facial validity of this written policy is barred by *res judicata*. Plaintiff argues that the

Judge in this prior case failed to give Plaintiff an opportunity to fully litigate this issue because the Judge denied Plaintiff's motion for an extension.  Plaintiff could have appealed that case and made that argument on appeal, but he did not.  See <u>Vaughn v.</u> Chapman, 662 F'Appx. 464, 466 (7th Cir. 2016)(not published in F.Rptr.)("Vaughn abandoned his appeal from the earlier judgment, and by doing so he abandoned any contention that his initial lawsuit was dismissed erroneously.")  Plaintiff cannot pursue the same claim in this case which was already decided against him in his prior case.

In any event, the written policy allows for exceptions if a patient needs a short-acting inhaler more often than every 180 days.  The policy as written allows for the exercise of independent medical judgment.  And, the 180-day policy is not even relevant because the policy was not applied to Plaintiff.  Plaintiff points to no period of time relevant to this case in which he did not have an active prescription for a short-acting inhaler.  The delays in refilling this inhaler were not attributable to the 180-day policy.

Plaintiff also argues that Wexford has a policy of limiting patients to one medical complaint per visit.  Dr. Tilden agrees that generally patients are asked to address only one non-acute medical

problem per visit but that this does not apply when a patient has an urgent medical need. (Tilden Aff. ¶ 17.) In the abstract, the Court does not see a constitutional problem with this practice. The practice arguably ensures that the greatest number of patients are seen on any given day.

In any event, Plaintiff has no evidence that the practice as applied to him amounted to deliberate indifference to his serious medical needs. Plaintiff takes issue with Defendant Joneson, whom Plaintiff saw on September 2, 2016, for complaints of an asthma exacerbation, shoulder pain, and a cold. Joneson told Plaintiff to pick the one problem Plaintiff wanted to address, and Plaintiff chose his asthma exacerbation. Plaintiff has no evidence that his cold was a serious medical need. *See* Gibson v. McEvers, 631 F.2d 95 (7th Cir. 1980)("Plaintiff's allegation that he was refused medical treatment for a cold does not show deliberate indifference to a serious medical need, and therefore there was no violation of his constitutional rights."). Plaintiff's shoulder pain was treated by Defendant Ojelade on September 9, 2016, after Joneson's referral. Defendant Ojelade renewed Plaintiff's Mobic prescription and analgesic balm. (Ojelade Aff. ¶ 8.) Thus, Dr. Ojelade addressed

more than one complaint of Plaintiff's despite the one-complaint practice. Plaintiff suffered no constitutionally actionable harm from the one-complaint-per-visit practice.

Wexford could be liable if any evidence suggested that the refill delays or the decision to stop Plaintiff's Alvesco was caused by a Wexford practice or policy. The Court sees no such evidence. On the other hand, Defendants do not address this possibility in their motion for summary judgment. At this point, Wexford will remain in the case on the possibility that a Wexford practice or policy caused the refill delays or Dr. Tilden's cessation of the Alvesco. If this case does not settle, the Court will consider whether Defendants Wexford, Pouk, or Caruso may file a renewed motion for summary judgment.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's motion for summary judgment is denied. (d/e 35.)

2) Defendants' motion for summary judgment is denied. (d/e 50.)

3) Defendant "John Doe" is dismissed without prejudice. Plaintiff has not identified the John Doe Defendant, and discovery is closed.

4) This case is referred to the Magistrate Judge to conduct a settlement conference.

5) The clerk is directed to notify the Magistrate Judge of this referral.

ENTERED: February 16, 2018

FOR THE COURT:

                                   **s/Sue E. Myerscough**
                                    SUE E. MYERSCOUGH
                             UNITED STATES DISTRICT JUDGE